OPINION
{¶ 1} Melanie A. Johnson appeals from the judgment of the Lake County Court of Common Pleas, denying her motion to withdraw her plea of guilty, and sentencing her to indefinite terms of imprisonment of thirty years to life for felony murder. We affirm.
 {¶ 2} During the evening of February 26, 2007, Ms. Johnson was driving westbound on State Route 2. Her two youngest children, Tyleilya and Tyshawn Riley, *Page 2 
aged two and three years old, respectively, were in the backseat, unrestrained. Between East 305th Street and Lloyd Road, Ms. Johnson slowed, then made a U-turn, and headed east, the wrong way. She accelerated up to about sixty miles per hour, before striking a car driven by Jason Jenkins. Mr. Jenkins was thrown from his car, and killed; Tyleilya and Tyshawn were also killed; and, Ms. Johnson suffered major injuries. It was determined that Ms. Johnson had a blood alcohol content of at least .15. Approximately nine grams of cocaine were found in Ms. Johnson's car.
 {¶ 3} Throughout these proceedings Ms. Johnson has maintained she has no recollection of the events.
 {¶ 4} On July 9, 2007, Ms. Johnson was indicted by the Lake County Grand Jury on a secret indictment on sixteen counts: Count 1, trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a felony of the second degree; Count 2, trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a felony of the first degree; Count 3, trafficking in cocaine, in violation of R.C. 2925.03(A)(2), a felony of the third degree; Count 4, possession of cocaine, in violation of R.C. 2925.11, a felony of the fourth degree; Count 5, murder, in violation of R.C. 2903.02(B), predicated on felonious assault; Count 6, murder, in violation of R.C. 2903.02(B), predicated on felonious assault; Count 7, murder, in violation of R.C.2903.02(B), predicated on felonious assault; Count 8, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), a felony of the second degree; Count 9, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), a felony of the second degree; Count 10, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), a felony of the second degree; Count 11, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the *Page 3 
third degree; Count 12, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree; Count 13, aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree; Count 14, operating a vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; Count 15, operating a vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(g), a misdemeanor of the first degree; and Count 16, operating a vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(c), a misdemeanor of the first degree.[1]
 {¶ 5} July 10, 2007, Ms. Johnson filed a written plea of "not guilty," along with a written waiver of her right to be present at arraignment. Jury trial was set for August 28, 2007. August 20, 2007, following hearing before the trial court, Ms. Johnson filed a written plea of "guilty" to the felony murder charges against her, which the trial court accepted. By a judgment entry filed August 23, 2007, the trial court again accepted the pleas of guilty to the felony murder charges, and nolled the remaining counts of the indictment. The trial court further ordered that a pre-sentence investigation be had, and victim impact statements prepared. The trial court set sentencing hearing for September 24, 2007.
 {¶ 6} September 24, 2007, prior to the scheduled sentencing hearing, the trial court met with counsel in chambers. The state and Ms. Johnson's counsel presented a joint recommendation that she be sentenced to indefinite terms of fifteen years to life on each of the felony murder charges, the terms to run concurrently. Evidently, the trial court indicated its dissatisfaction with this recommendation; whereupon, Ms. Johnson's *Page 4 
 {¶ 7} counsel made an oral motion to withdraw her pleas of guilty, pursuant to Crim. R. 32.1. The sentencing hearing was evidently cancelled; and, the following day, Ms. Johnson filed a written motion to withdraw her pleas. October 9, 2007, the state responded.
 {¶ 8} Hearing was held on the motion to withdraw November 2, 2007. Denying Ms. Johnson's motion, the trial court proceeded to sentencing hearing that same day. It rejected the joint recommendation of the state and Ms. Johnson's counsel that her terms of imprisonment be concurrent. Rather, it sentenced her to concurrent indefinite terms of imprisonment of fifteen years to life for the murders of her two children, these terms to run consecutive to an indefinite term of fifteen years to life for the murder of Mr. Jenkins. The trial court further suspended her driving license for life, and ordered her to pay costs. These determinations were memorialized in a judgment entry filed November 8, 2007.
 {¶ 9} November 20, 2007, Ms. Johnson timely noticed this appeal, assigning four errors:
 {¶ 10} "[1.] THE TRIAL COURT ERRED BY ACCEPTING THE DEFENDANT-APPELLANT'S PLEA OF `GUILTY' IN VIOLATION OF CRIMINAL RULE 11 AND HER DUE PROCESS RIGHTS AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 11} "[2.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY DENYING HER PRE-SENTENCE MOTION TO WITHDRAW HER PLEA IN VIOLATION OF HER DUE PROCESS RIGHTS AS *Page 5 
GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 12} "[3.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENANT-APPELLANT (sic) BY ALLOWING HER TO BE CHARGED WITH MURDER IN VIOLATION OF R.C. 1.51 AND HER RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTIONS 2, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
 {¶ 13} "[4.] THE TRIAL COURT VIOLATED DEFENDANT-APPELLANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTIONS 2, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT SENTENCED [HER] CONTRARY TO R.C. 2929.11(B)."
 {¶ 14} By her first assignment of error, Ms. Johnson argues she did not truly understand the effect of her guilty pleas, as required by Crim. R. 11. She cites to a recording made of a telephone conversation she had with an unidentified male friend shortly after her aborted sentencing hearing September 24, 2007. In that conversation, she noted her distress at the information that the trial court was disinclined to accept the joint recommendation of counsel that her terms of imprisonment run concurrently, and debated the pros and cons of withdrawing her pleas, and going forward with trial. On appeal, Ms. Johnson contends this shows she did not understand that she could only withdraw the pleas she had entered with the permission of the trial court. *Page 6 
 {¶ 15} "`(* * *) (A) defendant, who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made, must demonstrate a prejudicial effect of which the test is whether the plea would have otherwise been made.' State v. Scarnati (Feb. 22, 2002), 11th Dist. No. 2001-P-0063, * * *, 2002 Ohio App. LEXIS 776, at 12, citingState v. Nero (1990), 56 Ohio St.3d 106, 108, * * *." State v. Allen, 11th Dist. No. 2007-G-2768, 2008-Ohio-1491, at ¶ 12. (Parallel citations omitted.)
 {¶ 16} In this case, there is simply nothing to indicate Ms. Johnson's plea was not made knowingly, intelligently, and voluntarily. She was represented by counsel. The trial court conducted a thorough colloquy with her, determining that she understood each and every right she was waiving. The trial court made absolutely clear to Ms. Johnson what the maximum sentence it might impose on her could be, if she pleaded guilty. There is nothing to indicate that Ms. Johnson suffers from any cognitive or emotional disability that might affect her ability to enter a knowing, intelligent, and voluntary plea. See, e.g., State v.Holin, 174 Ohio App.3d 1, 2007-Ohio-6255, at ¶ 38-43 (O'Toole, J., dissenting).
 {¶ 17} Further, as the state remarks in its brief, the telephone conversation Ms. Johnson uses as support for this assignment of error occurred immediately after the aborted sentencing hearing of September 24, 2007, when her counsel evidently made an oral motion to withdraw her plea, after learning the court was disinclined to accept the joint sentencing recommendation. That she would be troubled by the prospect of a thirty year minimum sentence, and hopeful that her counsel could obtain leave to withdraw her pleas, is understandable in the circumstances. It does not necessarily *Page 7 
show that she did not understand the natures of her pleas when she made them, more than a month previously.
 {¶ 18} The first assignment of error lacks merit.
 {¶ 19} By her second assignment of error, Ms. Johnson contends the trial court erred in failing to grant her motion to withdraw her pleas of guilty. She urges this court to apply the nine-part test adopted by the Ninth District Court of Appeals in State v. Wheeland, 9th Dist. No. 06CA0034-M, 2007-Ohio-1213, at ¶ 12.
 {¶ 20} Motions to withdraw a plea post-sentencing are governed by Crim. R. 32.1. "However, the rule itself gives no guidelines for a trial court to use when ruling on a presentence motion to withdraw a guilty plea." State v. Xie (1992), 62 Ohio St.3d 521, 526. It is accepted that presentence motions to withdraw a plea should be granted liberally.State v. Peterseim (1980), 68 Ohio App.2d 211, at paragraph one of the syllabus. However, whether the motion is made before or after sentencing, appellate review is limited to determining whether the trial court abused its discretion. Id. at paragraph two of the syllabus. An abuse of discretion is no mere error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g., State v.Ferranto (1925), 112 Ohio St. 667, 676-678.
 {¶ 21} In evaluating presentence motions to withdraw guilty pleas, this court has generally applied the four-part test pronounced by the Eighth District Court of Appeals in *Page 8 Peterseim. See, e.g., Holin, supra, at ¶ 16. As stated by thePeterseim court, at paragraph three of the syllabus:
 {¶ 22} "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."
 {¶ 23} In the instant case, Ms. Johnson admits, in her brief, that she was represented by highly competent counsel, and that the trial court conducted a full and fair hearing on her motion to withdraw.[2]
Further, in disposing of her first assignment of error, we have already determined that the plea hearing was fully compliant with the requirements of Crim. R. 11. Consequently, the only issue presented by this assignment of error is whether the trial court's denial of the motion to withdraw met the fourth part of the Peterseim test: i.e., did the trial court give full and fair consideration to that motion?
 {¶ 24} A review of the relevant portions of the transcript for the hearing on the motion to withdraw, reveals the trial court gave the motion full and fair consideration. The trial court looked to each of the Peterseim factors. It noted Ms. Johnson was represented by highly competent counsel. It reminded the parties it had explained very fully to Ms. Johnson at the plea hearing that she could, on pleading "guilty" to three counts of felony murder, receive consecutive indeterminate sentences of fifteen years to life; and, that the court was not bound by any sentencing recommendation. It noted that *Page 9 
Ms. Johnson did not dispute the facts underlying the charges brought against her. It noted that the motion to withdraw her pleas was submitted only after Ms. Johnson learned the trial court was disinclined to accept the joint recommendation of counsel that all her terms of imprisonment run concurrently, and concluded, based on this, that her motion to withdraw was premised on a "change of heart." It is well-established that a change of heart will not support a motion to withdraw a plea. State v. Haney, 11th Dist. No. 2006-L-253,2007-Ohio-3712, at ¶ 19.
 {¶ 25} The trial court did not abuse its discretion in rejecting Ms. Johnson's motion to withdraw her pleas. Consequently, the second assignment of error lacks merit.
 {¶ 26} By her third assignment of error, Ms. Johnson argues she was improperly indicted for both felony murder, R.C. 2903.02(B), and aggravated vehicular homicide, R.C. 2903.06(A)(1) and (2). She contends she should only have been charged with the latter crimes.
 {¶ 27} In support of this contention, Ms. Johnson first points to R.C. 1.51, the rule of statutory construction requiring that special and local provisions of the law must prevail over general provisions. That section provides as follows:
 {¶ 28} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." *Page 10 
 {¶ 29} Ms. Johnson then cites to State v. Chippendale (1990),52 Ohio St.3d 118, at paragraph three of the syllabus, where the Supreme Court of Ohio ruled: "Where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous on the matter, under R.C. 1.51, a prosecutor may charge only on the special provision." This rule applies only "when a general and a special provision constitute allied offenses of similar import and additionally do not constitute crimes committed separately or with a separate animus for each crime." Chippendale at 120. Ms. Johnson contends that aggravated vehicular homicide and felony murder are allied offenses of similar import, and thus, that she could only be prosecuted for the special provision — i.e., aggravated vehicular homicide.
 {¶ 30} The state responds by noting that no objection was placed on the record before the trial court regarding this issue, and thus, that we may only review for plain error. It admits that felony murder is a general provision, and that aggravated vehicular homicide is special — but denies the crimes are allied offenses of similar import.
 {¶ 31} The state is correct in its contention that no objection to Ms. Johnson's indictment for both aggravated vehicular homicide and felony murder is of record. However, under Crim. R. 52(B), "plain error" affecting substantial rights may be noticed by an appellate court, even though the issue was not raised before the trial court. Cf. State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 62. There are three limits on an appellate court's ability to review "plain error" absent an objection: (1) there must be a genuine error, a departure from a legal rule; (2) the error must be "plain" or "obvious"; and, (3) the error must have affected the defendant's substantial rights — i.e., the outcome of the trial. Id. "Notice of plain error under Crim. R. 52(B) is to be taken with *Page 11 
the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, at paragraph three of the syllabus.
 {¶ 32} A finding that a defendant is guilty of felony murder carries with it a potential life sentence. A finding that a defendant is guilty of aggravated vehicular homicide carries with it a definitive (if potentially lengthy) term of imprisonment. We have no difficulty in determining that an error of such magnitude as that alleged by Ms. Johnson, if true, is plain error. Improperly subjecting a defendant to a potential life term of imprisonment is the very definition of "a manifest miscarriage of justice."
 {¶ 33} The Supreme Court of Ohio has recently addressed the issue of when crimes constitute allied offenses of similar import. In State v.Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, at paragraph one of the syllabus, the court held:
 {¶ 34} "In determining whether offenses are allied offenses of similar import * * *, courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (State v. Rance (1999), 85 Ohio St.3d 632, * * *, clarified.)" (Parallel citation omitted.)
 {¶ 35} The holding of the Cabrales court was intended to correct the absurdities noted by many lower Ohio courts when applying theRance test. See, e.g, Cabrales at ¶ 16-20 (collecting cases). The difficulty most frequently addressed by this state's courts of appeal was that, by comparing the elements of crimes in the abstract, to determine *Page 12 
whether they constitute allied offenses of similar import, without any consideration of the facts, has resulted in defendants being charged, convicted, and sentenced for multiple crimes, when but one course of conduct, and one animus, existed. See, e.g., State v. Cox, 4th Dist. No. 02CA751, 2003-Ohio-1935, at ¶ 12 (defendant convicted for both aggravated arson and involuntary manslaughter based on one occurrence);State v. Waldron (Sept. 1, 2000), 11th Dist. No. 99-A-0031, 2000 Ohio App. LEXIS 3984, at 14-15 (defendant convicted for both involuntary manslaughter and aggravated vehicular homicide: "Unfortunately, * * *, we have not only said that appellant was guilty of killing two people, we are saying he was guilty of killing each victim two times.") (Christley, J., concurring). It appears that cases of this type come perilously close to violating the double jeopardy principals Rance was intended to protect. Cf. Id. at paragraph three of the syllabus. Whether the clarification intended by Cabrales is effective remains to be seen: it is of no aid to Ms. Johnson, in this case.
 {¶ 36} Ms. Johnson was charged with, and pleaded guilty to, felony murder, R.C. 2903.02(B), which provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of Section 2903.03
[voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." (Emphasis added.) Thus, to be charged with felony murder, there must be an allegation the defendant committed a high degree felony of violence, resulting in another's death. The predicate felony offenses underlying the felony murder charges against Ms. Johnson were felonious assault pursuant to R.C. 2903.11(A)(1), which is a felony of the second degree. R.C. 2903.11(D)(1). *Page 13 
 {¶ 37} Ms. Johnson was also charged with aggravated vehicular assault, pursuant to both R.C. 2903.06(A)(1)(a), and R.C. 2903.06(A)(2)(a). The former prohibits causing another's death as a "proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code." The latter prohibits causing another's death through the "reckless" operation of a motor vehicle.
 {¶ 38} Violations of R.C. 4511.19(A) may be felonies, or misdemeanors. In Chippendale, the Supreme Court of Ohio noted that "reckless" operation of a motor vehicle was a misdemeanor. Id. at 121, quotingState v. Davis (1983), 13 Ohio App.3d 265, 270. Consequently, aggravated vehicular homicide may be predicated upon misdemeanor conduct — while felony murder may only be predicated on felonious conduct. Obviously, under Cabrales, aggravated vehicular homicide and felony murder are not allied offenses of similar import, as their elements can differ so widely. A person might commit aggravated vehicular homicide in committing a misdemeanor violation of the OVI laws. A person might commit felony murder in the course of a rape.
 {¶ 39} As aggravated vehicular homicide and felony murder are not allied offenses of similar import, R.C. 1.51, and the third paragraph ofChippendale, are not at issue, and the third assignment of error lacks merit.[3]
 {¶ 40} By her fourth assignment of error, Ms. Johnson argues the trial court failed to follow the mandate of R.C. 2929.11(B), requiring that felony sentences be "consistent *Page 14 
with sentences imposed for similar crimes committed by similar offenders." While admitting that she pleaded guilty to three counts of felony murder, she contends the underlying fact pattern in this case is typical of that found in cases of aggravated vehicular homicide, and that her term of imprisonment should more closely approximate those imposed in such cases, rather than the indeterminate term of thirty years to life imposed. Ms. Johnson cites to numerous cases wherein drivers operating under the influence of alcohol or drugs committed egregious driving errors, and were charged and sentenced for aggravated vehicular homicide, not felony murder.
 {¶ 41} The state counters that, nevertheless, Ms. Johnson pleaded guilty to felony murder, not aggravated vehicular homicide, and that the trial court carefully considered and placed on the record its consideration of the seriousness and recidivism factors, pursuant to R.C. 2929.12, which is more than it was required to do. The state further argues we should not consider the cases advanced by Ms. Johnson as conflicting with this one, since we do not have the complete records of those cases in front of us — merely the summaries provided by the appellate decisions issued.
 {¶ 42} By its decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, the Supreme Court of Ohio declared important portions of Ohio's statutory sentencing scheme, which required judicial factfinding for sentencing enhancements, unconstitutional, for violating the right to trial by jury. However, the gap in the sentencing laws created byFoster left Ohio's appellate courts in a quandary regarding the standard of review to be applied to sentencing appeals. Some districts, looking to the seventh paragraph of the syllabus in Foster, reviewed such appeals solely for abuse of discretion. Others continued to apply the sentencing review statute, *Page 15 
R.C. 2953.08(G), making a de novo review of the record, and determining whether, "clearly and convincingly," the sentence imposed was contrary to law. Cf. State v. Mattes, 11th Dist. No. 2008-P-0022, 2008-Ohio-4972, at ¶ 18 (collecting cases).
 {¶ 43} The Supreme Court of Ohio recently addressed this conflict inState v. Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912. A plurality of the court determined that the courts of appeal are now required to apply a two-part test in reviewing sentences. First, the appellate court must determine whether "the trial court has adhered to all applicable rules and statutes in imposing the sentence." Id. at ¶ 14. It does this through application of R.C. 2953.08(G). Failure by a trial court to adhere to all applicable rules and statutes when imposing sentence renders the sentence "clearly and convincingly contrary to law * * *." Id. If the appellate court finds the trial court has met this first part of the test, it then reviews the sentence for abuse of discretion. Id. at ¶ 17.
 {¶ 44} In this case, the learned trial court specifically referenced both R.C. 2929.11 and 2929.12 in its judgment entry of sentence. Consequently, the sentence imposed is not "clearly and convincingly contrary to law," the proper statutes having been referenced. Thus, we review this assignment of error for abuse of discretion. An abuse of discretion is no mere error of law or judgment. Blakemore, supra, at 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. Ferranto, supra, at 676-678.
 {¶ 45} This court has acknowledged that case by case comparisons, such as those made by Ms. Johnson, are useful in determining consistency in sentencing challenges. State v. Ashley, 11th Dist. No. 2006-L-134,2007-Ohio-690, at ¶ 29. *Page 16 
However, we have generally followed the rule that consistency in sentencing, pursuant to R.C. 2929.11(B), is derived from the trial court's proper application of the statutory sentencing guidelines. Id.
 {¶ 46} Further, it is evident from the transcript of the sentencing hearing that the learned trial judge made a very thorough examination of the R.C. 2929.12 seriousness and recidivism factors. It found the victims suffered serious physical harm — i.e., death — due to her actions, and that the victims' friends and families suffered serious psychological harm, factors indicating Ms. Johnson's crimes were more serious than normal, pursuant to R.C. 2929.12(B)(2). It found her relationship to her children facilitated the commission of the crimes, a seriousness factor pursuant to R.C. 2929.12(B)(6). It commented on her considerable criminal history, including two prior convictions for driving under suspension, one prior conviction for driving under the influence, and numerous violations of the requirements for properly restraining infants in motor vehicles, finding these prior crimes indicated a propensity to recidivism, pursuant to R.C. 2929.12(D)(2). It commented on her history of alcohol abuse, which she had not attempted to treat. This is another factor indicating a propensity to recidivism, pursuant to R.C. 2929.12(D)(4).
 {¶ 47} The trial court also noted the terrible loss experienced by Ms. Johnson, in being responsible for the deaths not only of Mr. Jenkins, but particularly, of her own infants.
 {¶ 48} Thus, we find no abuse of discretion in the trial court's application of the seriousness and recidivism factors, a principal consideration in determining whether a sentence is consistent and proportional under R.C. 2929.11(B). *Page 17 
 {¶ 49} As the state notes, "a prosecutor may bring charges against a defendant under any statute that proscribes the criminal behavior."State v. Murchison, 11th Dist. No. 2007-L-132, 2008-Ohio-2327, at ¶ 34. The behavior alleged in this case can be used to charge felony murder, even though aggravated vehicular homicide would be the standard charge. But while the state is free to pour old wine into new bottles, when crafting an indictment, the wine itself does not change. The singular criminal act of driving drunk, resulting in an accident where innocent individuals (in this case, both Mr. Jenkins and Ms. Johnson's own children) are tragically killed, is no more or less egregious, whether one or more innocents die. The act is the same, despite the state and trial court's ability to replicate that singular act via the multiple victims and stack the sentences, or describe that singular act in a myriad of ways. Nevertheless, felony murder is the crime to which Ms. Johnson pleaded: we cannot say the trial court abused its discretion in sentencing a defendant to thirty years to life in prison, for threemurders (as opposed to three vehicular homicides).
 {¶ 50} The fourth assignment of error lacks merit.
 {¶ 51} The judgment of the Lake County Court of Common Pleas is affirmed.
 {¶ 52} It is the further order of this court that costs are waived since appellant appears from the record to be indigent. The court finds there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J., concurs,
DIANE V. GRENDELL, P.J., concurs in judgment only.
[1] We note that the copy of the indictment in the record bears no time stamp.
[2] The first and third parts of the Peterseim test are the same as the second and fourth parts of the test approved by the Ninth District in Wheeland, relied on by Ms. Johnson.
[3] We note that, under the more fact-based analysis applied, for instance, in Newark v. Vazirani (1990), 48 Ohio St.3d 81, Ms. Johnson's argument might succeed, since the predicate offense of misdemeanor drunk driving supporting three of her aggravated vehicular homicide charges is clearly a special provision, taking precedence over the general provision of felonious assault supporting the felony murder charges against her. *Page 1